IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KELVIN SMITH,

        Petitioner,

v.                                                  Civil Action No. 2:14cv78
                                                    (Judge Bailey)

R.A. PERDUE, Warden,

        Respondent.

## REPORT AND RECOMMENDATION

### I.   Background

On October 7, 2014, the *pro se* petitioner, Kelvin Smith ("Smith") an inmate at FCI Gilmer in Glenville, West Virginia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241, challenging a decision of the United States Parole Commission ("USPC"). Attached to his petition were two typewritten memoranda in support, one comprising fourteen pages, and the other, fifteen.[1] Along with his petition, Smith paid the $5.00 filing fee; filed a Motion for Leave to Proceed *in Forma Pauperis* ("IFP"); and a copy of his Prisoner Trust Account Report ("PTAR") with its attached Ledger Sheets.

By Order entered October 8, 2014, petitioner's court-approved form petition was struck from the docket and petitioner was directed to re-file both in compliance with the LR PL P, limiting the filing of any memorandum in support to no more than 10 pages, accompanied by a motion to exceed the page limit.

---

[1] Excluding the ten-page court approved form and its cover letter, the supporting memoranda and other attachments to the petition comprised 124 pages. LR PL P 3.4.4 permits no more than 5 typewritten pages to be attached to any court-approved form, unless accompanied by a Motion for Leave to file excess pages.

On October 23, 2014, petitioner refiled his court-approved form petition with an attached 10-page memorandum, along with another copy of his Motion for IFP, PTAR and Ledger Sheets. He did not file a motion to exceed the page limits.

By Order entered October 27, 2014, petitioner's second court-approved form petition was struck; petitioner was again instructed to refile it in accordance with the LR PL P, accompanied by a motion to exceed the page limits.

On November 10, 2014, petitioner refiled his court-approved form petition, accompanied by a motion to exceed the page limits and a third motion for leave to proceed IFP.

On November 17, 2014, the undersigned entered a Report and Recommendation ("R&R"), recommending that petitioner's third motion for IFP be denied because petitioner had sufficient funds in his account to pay the fee. By separate Order entered the same day, petitioner's motion to exceed the page limit was granted.

On December 1, 2014, the Clerk of Court received a letter from petitioner, postmarked November 26, 2014; in it, petitioner apparently enclosed a fourth IFP motion, along with another $5.00 filing fee. By letter the following day, the Clerk returned the $5.00 fee, advising petitioner that he had already paid the fee on October 7, 2014. Accordingly, that same day, the undersigned entered an Order vacating the November 17, 2014 R&R, and directing the Clerk to terminate the three pending IFP motions.

On December 17, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted, accordingly, an Order to Show Cause was issued against the respondent. On January 8, 2015, the respondent moved for an extension of time. By Order entered January 12, 2015, respondent's motion was granted. On February 19, 2015, the respondent filed a Motion to Dismiss or Motion for Summary Judgment and a

Response to Order to Show Cause. On February 23, 2014, because petitioner was proceeding *pro se,* a Roseboro Notice was issued.

On March 16, 2015, the petitioner filed untimely objections to the already-vacated November 17, 2014 R&R, along with a Motion for Magistrate Court [sic] to Recusal [sic] Pursuant to 28 U.S.C. §455(b). By Order entered March 17, 2015, petitioner's objections were noted; his recusal motion was denied; and the time for his response to the Roseboro Notice was re-set. On April 8, 2015, petitioner filed a document titled Petitioner's Notice of Appeal of Magistrate's Order in a Form of a Complaint Pursuant to 28 U.S.C. §351, Noting Petitioner's Objections, Denying Petitioner's Motion for Magistrate Court to Recusal [Sic], and Resetting Response time to Respond to Respondent's Motion to Dismiss or for Summary Judgment. However, despite being granted an extension of time to respond, petitioner never filed a response.

This case is before the undersigned for a Report and Recommendation on the respondent's Motion to Dismiss or for Summary Judgment.

## II. Facts

The offense for which petitioner was convicted occurred on October 1, 1984.[2] On February 18, 1986, after a jury trial in Case No. F-8616-84, the Superior Court for the District of Columbia sentenced petitioner to an aggregate term of 35 years to life imprisonment for first degree felony murder while committing armed kidnapping; armed robbery; and first degree felony murder while committing armed robbery.[3]

---

[2] Superior Court of the District of Columbia Judgment and Commitment/Probation Order, Dkt.# 35-1 at 3; Sentence Monitoring Computation Data, Dkt.# 35-1 at 5.

[3] Superior Court of the District of Columbia Judgment and Commitment/Probation Order, Dkt.# 35-1 at 3.

Petitioner has been in custody since his arrest on December 10, 1984.[4] On April 24, 2014, the USPC provided petitioner with an initial hearing.[5] At the time of that hearing, petitioner was 49 years old, had been in custody 352 months,[6] and had a parole eligibility date of October 12, 2014.[7] He had a Salient Factor Score ("SFS") of 7, a Base Point Score of 6, and a Total Guideline Range of 424 - 478. (Dkt.# 35-1 at 19). In her hearing summary, the hearing examiner noted that since being incarcerated, petitioner had incurred 11 non-drug related infractions; 1 drug-related infraction; and three instances of Category Three severity behavior constituting new criminal conduct in a prison facility, which she then covered at the hearing. The eleven non-drug-related infractions had Rescission Guidelines of 0-2 months each, for a total of 22 months; the drug-related infraction had a Rescission Guidelines of 0-8 months; the three instances of new criminal conduct in a prison facility with Category 3 severity had Rescission Guidelines of 12-16 months each, giving him an aggregate Disciplinary Guideline of 36-78 months, to be added to his base point score guideline range.[8] However, petitioner also had Superior Program Achievement ("SPA") for participating in 18 vocational/educational and physical fitness programs and obtaining his GED while incarcerated, earning him a reduction of 6 months from his Total Guideline Range.[9] After applying the guidelines at 28 C.F.R. §2.80 (2000), on May 7, 2014, the hearing examiner issued her overall evaluation and recommendation, which indicated

---

[4] See USPC Post Hearing Assessment, Dkt.# 35-1 at 8.

[5] USPC Post Hearing Assessment, Dkt.# 35-1.

[6] See 2.80 Guideline Worksheet, Dkt.# 35-1 at 15.

[7] See Sentence Monitoring Computation Data, Dkt.# 35-1 at 6.

[8] Dkt.# 35-1 at 19.

[9] See Dkt.# 35-1 at 9 and 19.

that petitioner had a guideline range of 424-478 months.[10] As a result of the hearing, the USPC issued its decision, denying parole and ordering a reconsideration hearing to be held after the service of 60 months from the initial hearing date, or in April, 2019.[11]

### III. Contentions of the Parties

**A. The Petition**

In the petition, the petitioner argues that the USPC committed an *Ex Post Facto* Clause violation by applying the 2000 guidelines to his initial parole hearing instead of the 1987 D.C. Board of Parole ("DCBP") Guidelines. Further, he contends that at his hearing, the examiner wrongfully decided that he should serve an additional 60 months beyond his statutory minimum term, based on the 2000 regulations' disciplinary guideline range. Finally, he argues that the USPC unlawfully promulgated regulations that do not include a provision for an administrative appeal of D.C. parole decision, and therefore, his parole decision is arbitrary and capricious, and violates §4 of the Administrative Procedure Act ("APA"), his Due Process and Equal Protection rights.

As relief, petitioner seeks rehearing of his initial parole consideration under the DCBP 1987 guidelines and the USPC "Remedial Plan" for D.C. Offenders, and for the respondent to establish a reconsideration/appeal procedure into its 2000 regulations, pursuant to 5 U.S.C. §553 *et seq.*, to permit him to appeal any USPC decision. Further, he moves for discovery, to "effectuate a hearing pursuant to §2241(d) and Fed.R.Civ.P. 26."

**B. The Respondents' Motion to Dismiss or for Summary Judgment**

The respondent seeks dismissal of the petition, or judgment as a matter of law, on the following grounds:

---

[10] See USPC Post Hearing Assessment, Dkt.# 35-1 at 9 and 2.80 Guideline Worksheet, Dkt.# 35-1 at 16.

[11] See 2.80 Guideline Worksheet, Dkt.# 35-1 at 15 and DOJ/USPC May 7, 2014 Notice of Action, Dkt.# 35-1 at 17.

5

1) petitioner has failed to state a cognizable *Ex Post Facto* claim, because the 1987 guidelines were not in effect when he committed his crime; and

2) petitioner has no right to an administrative appeal.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its

face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. <u>Summary Judgment</u>**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. Discussion

At one time, there existed a "Board of Parole . . . for the penal and correctional institutions of the District of Columbia," D.C. Code §24-401.01(a) (2001), which determined an offender's suitability for parole. In 1997, Congress overhauled the District of Columbia's government, including the parole system through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). The Revitalization Act abolished the D.C. Board of Parole, and the USPC obtained jurisdiction of D.C. Code offenders to grant and deny parole. Accordingly, since August 5, 1998, the USPC has conducted the hearings and decided the

requests for parole of all persons convicted of violating the D.C. Code.[12] Prior to that date, the D.C. Parole Board conducted the parole hearings for D.C. Code offenders, applying guidelines it formally adopted in 1985, and published in the District of Columbia Municipal Regulations in 1987 ("1987 Regulations"). Upon assuming the D.C. Board's jurisdiction, the USPC began a process of revising the regulations for determining D.C. Code offenders' suitability for parole. See Sellmon v. Reilly, 551 F.Supp.2d 66, 72-73 (D.D.C. 2008) (discussing revisions) ("Sellman I"). The revisions were codified at 28 C.F.R. §§2.70-2.107 in 2000 ("2000 Regulations"). The 2000 Regulations specify that they are applicable to a D.C. Code offender, whose first parole hearing would occur after August 5, 1998. See 28 C.F.R. §2.80(a)(5).

**A. 1987 Regulations**

"The 1987 Regulations were adopted to 'structure the exercise of the paroling authority's discretion' and to promote 'increased consistency in parole release decisions and enhanced accountability of the Board' by making '**explicit** those factors that will be considered in each case." Sellmon at 554, *quoting* Report on the Development of the Paroling Policy Guidelines for the District of Columbia Board of Parole (emphasis in original). Under the 1987 Regulations, after serving his minimum sentence, a D.C. Code offender became eligible for parole.[13] The D.C. Parole Board would then determine the prisoner's suitability for parole by calculating a total point score (TPS) which ranges from 1 to 5. Based on the TPS score, the 1987 regulations lead to one of two outcomes: "parole shall be granted" or "parole shall be denied. D.C. Mun. Regs. Tit. 28, §§ 204.19-.22 (1987) (repealed 2000). At an initial parole hearing, a prisoner with 0, 1, or 2

---

[12] Effective August 5, 2000, the USPC also was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2).

[13] "[T]he justice or judge of the court imposing [a felony] sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole...at any time after having served the minimum sentence. " D.C. Code §24-403 (2001).

points "shall be" granted parole with varying degrees of supervision. Id. at §204.19. For a prisoner with 3, 4, or 5 points, "[p]arole shall be denied at initial hearing and hearing rescheduled." Id. However, regardless of whether the 1987 Regulations indicated that a prisoner's parole should be granted or denied, the D.C. Board retained the discretion to reach a different decision if merited by "unusual circumstances." Id. at §204.22.

**B. The 2000 Regulations**

Between 1998 and 2000, the Commission drafted new parole regulations and guidelines that it applied to any offender who received an initial parole hearing after August 5, 1998. See "Sellmon I," 551 F.Supp.2d at 73. The Commission justified its revisions by explaining that its research demonstrated that "[t]he point score system used by the D.C. Board of Parole ha[d] resulted in a high rate of upward departures from the guidelines based upon factors that should be included in the guidelines...." 63 Fed. Reg. 17771, 17772 (Apr. 10, 1998).

The 2000 Regulations establish the process the Commission follows to calculate the number of months a prisoner should serve in custody before he is suitable for parole. This multi-step process results in what is called the Total Guidelines Range, which is the "amount of time [a prisoner] may expect to serve with continued good conduct and ordinary program achievement." 65 Fed. Reg. 0663, 70664 (November 27, 2000). Until the prisoner has served a period of time equal to the bottom of his total guideline range, he is presumed to be unsuitable for parole. See 28 C.F.R. §§2.80(h), (I), & (f). Like the 1987 Regulations, the 2000 Regulations permit the USPC to deny parole to a prisoner who is presumptively eligible, under "unusual circumstances." The 2000 Regulations provide examples of "unusual circumstances" but do not limit the discretion of the USPC to depart on any basis that it classified as "unusual" except that it cannot have been "fully taken into account in the guidelines." 28 C.F.R. § 2.80(n).

# VI. Analysis

**Ground One – Pursuant to Selmon v. Reilly ("Sellmon I"), the Retroactive Application of the 2000 Guidelines Inflicted an *Ex Post Facto* Clause Violation on Petitioner**

The *Ex Post Facto* Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (internal quotations omitted). The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. at 30. "To fall within the *ex post facto* prohibition, a law must be retrospective - - that is, it must apply to events occurring before its enactment - - and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997).

Here, petitioner maintains that the USPC wrongfully utilized the 2000 Regulations instead of the 1987 Regulations, which he contends would have been more favorable to him. He argues that the retroactive application of these guidelines to his 1986 conviction creates an *ex post facto* violation. He cites to the "Sellmon I" decision in support of his claim that because he is among the class of D.C. offenders "who . . . committed crimes between 1985 [sic] and 2000,"[14] he suffered an *ex post facto* violation when the 2000 regulations were instituted. Thus, he argues, he is entitled to a new initial hearing under the 1987 guidelines. The undersigned finds his argument to be without merit.

Here, it is clear that the crimes for which the petitioner is incarcerated were committed prior to the adoption of the 1987 Regulations. Contrary to petitioner's claim that he committed

---

[14] Dkt.# 19 at 5.

his crimes between 1985 and 2000, it is clear from the record his offenses were committed on October 1, 1984 and that he was convicted on February 18, 1986. At the time the petitioner committed the offenses for which he is still under sentence, parole eligibility was determined by a statute in effect since 1932, which provides in pertinent part that:

> in imposing sentence on a person convicted in the District of Columbia of a felony, the justice, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence.

D.C. Code §24-403(a) (2001). The parole authority operated pursuant to a statute, also in effect since 1932, which provides that:

> [w]henever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code §24-4-4(a).

When the petitioner was convicted, the Board had no formalized scoring system, but was required by regulation to consider factors such as the inmate's offense, prior history of criminality, personal and social history, physical and emotional health, institutional experience, and availability of community resources, when exercising its discretion to authorize parole. See 9 DCRR §105. The Board's discretion under this regime has been described as "almost unbridled" "Sellmon I," 551 F.Supp.2d at 86, and "totally unfettered," Sellmon v. Reilly, 561 F.Supp.2d 46, 50 (D.D.C. 2008) ("Sellmon II"). Accordingly, under this statute, it is clear the USPC had discretion whether to parole a particular individual, and there was no guarantee that parole would be granted at the earliest possible date, or any date thereafter. Petitioner's Total Guideline Range

at his April 2014 hearing was 424-478. At the date of his April, 2014 hearing, he had only served three hundred fifty-two months, or twenty-nine years and four months, considerably less than the period of time equal to the bottom of his total guideline range of 424 months, or thirty-five years and four months. The Commission properly concluded he was "unsuitable for parole." 28 C.F.R. §§ 2.80(h), (I), & (f). Petitioner cannot show that the use of the 2000 guidelines substantially increased his punishment as compared to the regime used by the Board of Parole at the time he was convicted. Moreover, he would have fared no better under the 1987 guidelines than he did under the 2000 guidelines, because his crimes were committed prior to the effective date. 74 Fed. Reg. 34688 (July 17, 2009) ("If the prisoner committed his crime before the effective date of the 1987 guidelines (March 4, 1985), then the Commission is not required to apply those guidelines to his case."). Accordingly, his *ex post facto* claim should be dismissed. "Sellmon I," 551 F. Supp.2d at 86 (dismissing *ex post facto* claims of plaintiffs Charles Phillips and Benson West-El, whose crimes were committed before 1985); "Sellmon II," 561 F. Supp.2d 46, 50 (D.D.C. 2008) (denying plaintiff Phillips' motion for reconsideration); Austin, 606 F. Supp.2d at 8 ("At the time Austin committed the offenses for which he is still under sentence, parole eligibility was determined by a statute in effect since 1932.").

Finally, it must be remembered that the petitioner was sentenced to an aggregate term of imprisonment of 35 years to life imprisonment for first degree felony murder while committing armed kidnapping; armed robbery; and first degree felony murder while committing armed robbery. Therefore, any period of incarceration exceeding the aggregate minimum sentence of thirty-five years for his offenses is not an increase in sentence, because petitioner ultimately faces a potential lifetime term of incarceration. Therefore, in petitioner's case in particular, the

change in parole guidelines could not violate the *ex post facto* clause, as there can be no increase in punishment beyond the possible life sentence that was imposed.

**Ground Two – <u>The USPC's Wrongful Application of the 2000 Regulations' Disciplinary Guideline Range Prejudiced Petitioner</u>**

Petitioner contends that the USPC's wrongful application of the 2000 Regulations instead of the 1987s Regulations prejudiced him, because the USPC considered his disciplinary infractions back to October 1986 to aggregate into a Disciplinary Guideline range of 36-78 months, rather than only considering infractions that occurred more than 3 years prior to his parole hearing, as qualifying predicates for disciplinary purposes.

Here, it has already been shown that the 2000 Regulations are the applicable regulation, because the 2000 Regulations specify that they are applicable to a D.C. Code offender whose first parole hearing would occur after August 5, 1998. <u>See</u> 28 C.F.R. §2.80(a)(5). Despite petitioner's argument to the contrary, "<u>Sellmon</u> I" provides him no relief, because his crimes were committed prior to the effective date. 74 Fed. Reg. 34688 (July 17, 2009) ("If the prisoner committed his crime before the effective date of the 1987 guidelines (March 4, 1985), then the Commission is not required to apply those guidelines to his case."). Thus, this claim likewise has no merit and should be dismissed.

**Ground Three – <u>The Non-Appealable Initial Parole Denial is Arbitrary and Capricious,a Violation of §4 of the Administrative Procedure Act ("APA"), and Violates Petitioner's Due Process and Equal Protection Rights</u>**

Petitioner contends that because the USPC failed to give notice of the 2000 regulations to interested persons of the public as required under the rule-making procedures of the APA, it violated the rule-making authority it was given under D.C. Code §24-131(A). Further, he argues, because the USPC's final determination "Notice of Action" was not appealable, it violated the APA, his Due Process and Equal Protection rights.

### A. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

In this case, the petitioner complains that the USPC's denial of his opportunity for reconsideration of his initial parole hearing and/or appeal violated his equal protection rights, because it subjected him to a longer period of incarceration. However, petitioner fails to even attempt to allege, let alone show, that he was treated any differently than any other D.C. prisoner who committed similar offenses at the same time. Moreover, prisoners are not generally considered a "suspect class" for equal protection purposes. See, e.g., Moss v. Clark, 886 F.2d 686, 689 (4th Cir. 1989). Accordingly, the petitioner's equal protection claim must fail.

### B. Due Process Clause, the APA and the Arbitrary and Capricious Standard

Petitioner asserts that the application of the 2000 Regulations instead of the 1987 Regulations violated his right to due process because it allowed the USPC to deny him parole. Petitioner further argues that the USPC's non-appealable denial of parole at his initial parole hearing is contrary to the purpose of §4215 of the Parole Commission Reorganization Act and because it is "totally dictorial [sic]," it is therefore arbitrary and capricious.

Even assuming *arguendo* that the 2000 Regulations were wrongfully applied to petitioner's initial parole hearing, petitioner, as a convicted felon, has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). "A conviction, with all its procedural safeguards, has extinguished that liberty right: [given] a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." Id., *quoting* Meachum v. Fano, 427 U.S. 215, 224 (1976) (internal quotation marks omitted). Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they were transferred to the jurisdiction of the USPC, does not create any liberty interest in parole. See, *e.g.*, McRae v. Hyman, 667 A.2d 1356 (D.C. 1995). (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996) (D.C. parole statute and regulations do not create any liberty interest in parole.) Furthermore, Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the USPC. Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981).

Therefore, parole decisions are not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedures Act, 5 U.S.C. §701(a)(2). Rather, judicial review is limited to a consideration of whether the USPC "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations. Garcia at 988; see also Fardella v. Garrison, 698 F.2d 208, 210 (4th Cir. 1982).

Accordingly, the USPC's exercise of its discretion in denying the petitioner parole and departing from the guidelines is unreviewable, and thus this Court is "without power to engage in judicial review of the Commission's substantive decision" to deny him parole, Garcia at 988. In other words, the substance or merits of the parole decision concerning the petitioner are beyond judicial review.

**C.** <u>**The Right to a USPC Administrative Appeal**</u>

Petitioner did not and cannot cite any authority for his claim that the USPC was required to include a provision for D.C. offenders to appeal a parole decision. There is no due process right to appeal a parole decision. See Ortwein v. Schwab, 410 U.S. 656, 660 (1973) ("This Court has long recognized that, even in criminal cases, due process does not require a state to provide an appellate process"); Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981) ("In unmistakable terms, the Parole Act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission."); Kellogg v. Shoemaker, 927 F.Supp. 244, 245 n.1 (S.D. Ohio 1996) (concluding that appeal process, in the parole context, is not required by due process). Moreover, the D.C. parole statute under which the USPC makes parole decisions for D.C. Code offenders does not provide for such an appeal.

Petitioner has no legal or factual basis to support his claim that denying him a right to appeal violates the *ex post facto* clause, or that the D.C. Board of Parole's regulations unlawfully promulgated regulations that failed to include a provision for an administrative appeal. See 28 D.C.M.R. §100 *et seq.;* 69 Fed. Reg. 68791 (November 26, 2004) ("The [D.C. Parole] Board did not provide for an appeal of any of its decisions, and, when the Commission took on D.C. revocation functions, neither did the Commission.")

Finally, petitioner's claim that the USPC failed to follow proper rulemaking procedures also fails. The USPC published proposed rules that did not include a right of appeal for DC offenders.[15] After considering public comment on the proposed rules, the USPC determined that the final rule would not include a right to an administrative appeal. 65 FR 45885; *cf.* 28 C.F.R. §2.70 *et seq.* (The Commission has provided for an administrative appeal in parole revocation cases, notwithstanding that no such right existed under D.C. parole regulations. See D.C. Code §§ 24-404-407.)

## VII. Recommendation

For the reasons stated above, the undersigned recommends that the respondent's Motion to Dismiss, or Motion for Summary Judgment (Dkt.# 34) be **GRANTED** and the petitioner's habeas petition (Dkt.# 19) be **DENIED and DISMISSED with prejudice.**

**Within fourteen (14) days** after being served with a copy of this recommendation, **or by June 2, 2015,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

[15] Under the Revitalization Act, the Commission has the authority to "amend and supplement" the D.C. parole regulations, which it has done. D.C. Code §24-131(a)(1) ("The Parole Commission shall have exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons... .").

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket and to counsel of record via electronic means.

DATED: May 19, 2015

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE